UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:25-cr-52-SE-AJ-01 |
| ) | |
| ERIK X. ALONSO ) | |

INDICTMENT

The Grand Jury Charges:

GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise stated:

**Health Care Benefit Programs**

1. The Medicaid program ("Medicaid") was a federal and state funded health insurance program designed to provide medical assistance to persons whose income and resources were insufficient to meet the costs of necessary care and services. The Centers for Medicare and Medicaid Services ("CMS") was responsible for overseeing Medicaid in participating states, including New Hampshire.

2. The New Hampshire Medicaid program ("NH Medicaid") was administered by the State of New Hampshire, through the New Hampshire Department of Health and Human Services ("DHHS").

3. NH Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

1

4. Individuals who qualified for NH Medicaid benefits were commonly referred to as "beneficiaries."

5. As part of the federally approved state plan, DHHS contracted with Medicaid Managed Care Organizations ("MCOs"), which were health insurance companies that provided coordinated health care to NH Medicaid beneficiaries. Health care professionals who contracted with MCOs to provide services to NH Medicaid beneficiaries were known as "providers."

6. NH Medicaid only paid for items and services that were reasonable and medically necessary and were provided by valid NH Medicaid providers.

7. A valid NH Medicaid provider was a person or business who agreed to (1) provide the service, (2) submit the claim, and (3) accept as payment in full the amount paid by NH Medicaid. Additionally, a valid NH Medicaid provider was a person or business that was not on the United States Department of Health and Human Services, Office of the Inspector General's ("HHS-OIG") List of Excluded Individuals/Entities ("Exclusion List").

8. HHS-OIG maintained the Exclusion List that identified individuals and entities who could not receive payment from a Federal health care program, such as NH Medicaid, for any items or services they furnished, ordered, or prescribed. Entities employing providers were required to screen their employees for their presence on the Exclusion List.

## Counseling Services

9. NH Medicaid covered a variety of health care services provided to beneficiaries, including treatment for various mental health issues, such as depression, addiction, or behavioral issues.

10. NH Medicaid additionally covered psychotherapy services, as well as services for individuals with developmental disabilities and acquired brain disorders.

11. NH Medicaid allowed psychotherapy services to be provided by way of telemedicine, meaning that the provider and the beneficiary interacted during their sessions via an online platform.

### The Defendant and Relevant Individuals and Entities

12. Clinic 1 was a mental health provider that provided psychotherapy services to individuals, including NH Medicaid beneficiaries, via telehealth. Clinic 1 had a principal place of business in Laconia, New Hampshire, within the District of New Hampshire.

13. Individual 1 was the owner of Clinic 1.

14. Individual 2 managed the front desk of Clinic 1.

15. Defendant **ERIK X. ALONSO ("ALONSO")** was a resident of Miami, Florida. **ALONSO** was employed at Clinic 1 as a clinical social worker who provided purported psychotherapy services, via telehealth, to patients of Clinic 1 who were located in New Hampshire. **ALONSO** was excluded from billing services to Federal health care programs, including NH Medicaid, and was identified on HHS-OIG's Exclusion List as an excluded provider.

16. J.C. was a NH Medicaid beneficiary and received telehealth counseling from **ALONSO** via Clinic 1.

17. G.C. was a NH Medicaid beneficiary and received telehealth counseling from **ALONSO** via Clinic 1.

18. T.C. was a NH Medicaid beneficiary and received telehealth counseling from **ALONSO** via Clinic 1.

19. G.R. was a NH Medicaid beneficiary and received telehealth counseling from **ALONSO** via Clinic 1.

20. B.M. was a NH Medicaid beneficiary and received telehealth counseling from **ALONSO** via Clinic 1.

### The Health Care Fraud Scheme

21. **ALONSO** engaged in a scheme to submit, and cause the submission of, false and fraudulent claims to Medicaid for purported counseling services. Despite having been previously excluded from Federal health care programs, including NH Medicaid, and identified on the Exclusion List, **ALONSO** provided purported counseling services to clients of Clinic 1, including NH Medicaid beneficiaries, and caused the submission of fraudulent claims to Medicaid for those purported services. As part of his scheme, **ALONSO** exploited J.C., a patient of Clinic 1, and used J.C. to assist with personal tasks, including preparing a presidential pardon for **ALONSO** in connection with his previous federal conviction for health care fraud, as well as applications for various medical licensure documents.

22. Specifically, on or about October 14, 2015, **ALONSO** pleaded guilty in the United States District Court for the Southern District of Florida (Miami Division) to conspiracy to commit health care fraud and conspiracy to make false statements relating to health care matters. **ALONSO's** signed plea agreement provided, "The defendant understands and acknowledges that as a result of this plea, the defendant will be excluded from Medicare, Medicaid, and all Federal health care programs."

23. On or about December 21, 2015, **ALONSO** was sentenced in the United States District Court for the Southern District of Florida (Miami Division) to 60 months in prison,

following his guilty plea to conspiracy to commit health care fraud and conspiracy to make false statements relating to health care matters. **ALONSO's** exclusion from Federal health care programs was discussed at the sentencing hearing.

24. On or about March 31, 2017, the State of Florida revoked **ALONSO's** clinical social worker license.

25. On or about September 6, 2017, HHS-OIG sent **ALONSO** a letter informing him that he would be excluded from Federal health care programs as a result of his conviction.

26. On or about November 30, 2017, HHS-OIG sent **ALONSO** a second letter notifying him that he would be excluded from Federal health care programs for a minimum of 42 years.

27. On or about January 26, 2022, **ALONSO** applied to Clinic 1.

28. On or about March 4, 2022, **ALONSO** executed a Contract Provider Work Agreement with Clinic 1, which read in part, "Contract Provider agrees and understands that said compensation is based on reimbursement from insurance payers per CPT codes."

29. On or about March 14, 2022, **ALONSO** and Individual 1 executed a supervision agreement, due to **ALONSO's** lack of licensure as a social worker, mental health worker, psychologist, or any other designation that would qualify him to treat patients.

30. Beginning in or around March 2022, **ALONSO** began an employment relationship with Clinic 1, which gave him access to a population of NH Medicaid beneficiaries, including the NH Medicaid beneficiaries J.C., G.C., T.C., G.R., and B.M. **ALONSO** subsequently caused Clinic 1 to bill NH Medicaid for counseling services **ALONSO** purportedly rendered to NH Medicaid beneficiaries.

31. In or around April 2022, J.C. began attending psychotherapy sessions, via telemedicine, with **ALONSO**. **ALONSO** was the only provider J.C. saw at Clinic 1.

32. Beginning in and around April 2023, and continuing through April 2024, **ALONSO** began treating T.C., via telemedicine, for psychotherapy. **ALONSO** was the only provider T.C. saw at Clinic 1.

33. On or about May 9, 2023, **ALONSO** submitted a Candidate for Licensure as a Licensed Independent Clinical Social Worker Supervision Agreement Application to the New Hampshire Board of Mental Health. In a supplemental statement to the application, regarding his 2015 federal conviction for conspiracy to commit health care fraud, **ALONSO** deceptively suggested that he was charged and convicted based only on his failure to report suspected health care fraud at a Florida clinic where he worked. **ALONSO's** involvement in the scheme extended beyond mere knowledge and failure to report, and involved overseeing and directing the fabrication of patient files, in furtherance of the scheme, and endorsing a check in the amount of approximately $4,000, of which the funds constituted proceeds from the fraud.

34. Beginning in and around July 2023, and continuing through August 4, 2023, **ALONSO** used his purported psychotherapy telehealth sessions with J.C. to discuss with her his efforts to obtain licensure in other New England states and his desire to draft and submit an application for a presidential pardon. **ALONSO** requested J.C.'s help with these tasks during J.C.'s purported psychotherapy sessions with **ALONSO,** which **ALONSO** caused to be billed to NH Medicaid. J.C. was discharged from **ALONSO's** care on August 4, 2023.

35. On or about July 21, 2023, **ALONSO** attended a hearing on his application for his conditional license as a Licensed Independent Clinical Social Worker before the New Hampshire Board of Mental Health.

36. On or about August 23, 2023, **ALONSO** told J.C. that he learned of his inclusion on HHS-OIG's Exclusion List.

37. Throughout **ALONSO's** employment with Clinic 1, Individual 1 communicated with staff, including **ALONSO**, about NH Medicaid related audits and audit findings. On or about September 18, 2023, Individual 1 sent an email to staff at Clinic 1, including **ALONSO**, advising staff of the results of a recent audit. In the email, Individual 1 wrote, in part, "Unfortunately, not meeting these standards has resulted in an $8,000 take back from Medicaid." On or about September 18, 2023, a Clinic 1 email account assigned to **ALONSO** (lifeworkstherapist3@lifeworkscounselingassociates.com) responded to this email, "Received, noted."

38. Beginning in and around October 2023, and continuing through in and around April 2024, **ALONSO** began treating G.C., via telemedicine, for psychotherapy. **ALONSO** was the only provider G.C. saw at Clinic 1.

39. On or about November 22, 2023, Individual 1 sent an email to staff at Clinic 1, including **ALONSO**, advising staff of the results of an audit for individual sessions billed in 2023 and the potential of a repayment of approximately $30,000. In the email, Individual 1 wrote, "Last year's Medicaid reimbursement was $75 per session; with operational costs, what remains barely covers clinician salaries, taxes, and other necessities." On or about November 22, 2023, a Clinic 1 email account assigned to **ALONSO** responded to this email.

40. Beginning in and around January 2024, and continuing through in and around May 2024, **ALONSO** began treating G.R., via telemedicine, for psychotherapy. **ALONSO** was the only provider G.R. saw at Clinic 1.

7

41. Beginning in and around February 2024, and continuing through May 2024, **ALONSO** began treating B.M., via telemedicine, for psychotherapy. **ALONSO** was the only provider B.M. saw at Clinic 1.

42. Prior to beginning treatment with **ALONSO**, B.M.'s mother spoke to **ALONSO** on the phone. During the phone call, B.M.'s mother asked **ALONSO** if he took NH Medicaid as B.M. had NH Medicaid for insurance. **ALONSO** told B.M.'s mother that he did accept NH Medicaid.

43. On or about February 9, 2024, G.R.'s mother emailed **ALONSO** regarding an insurance issue that had caused G.R. to cancel two prior appointments with **ALONSO**. In the email, G.R.'s mother wrote, in part, "[G.R.] has Medicaid to pay for these appointments." On or about February 9, 2024, **ALONSO** responded to G.R.'s mother, saying he would address the issue with his supervisor.

44. On or about February 12, 2024, Individual 2 emailed Individual 1 and **ALONSO** regarding G.R.'s insurance issue. In the email, Individual 2 wrote, in part, "The Mother changed insurance, provided Medicaid and NH Healthy Families." On or about February 12, 2024, **ALONSO** responded to Individual 2 and Individual 1, writing, in part, "Thank you [Individual 2] for all your help, this unfortunately happens a lot with Medicaid."

45. Beginning in and around March 2022, and continuing through in and around July 2024, claims were submitted to NH Medicaid by Clinic 1 for sessions conducted solely by **ALONSO** for NH Medicaid beneficiaries. During this time period, ALONSO profited approximately $111,463.55 based on funds paid by NH Medicaid.

## COUNTS 1 – 8
### Health Care Fraud
### (18 U.S.C. § 1347)

46.     Paragraphs 1 through 45 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

47.     On or about the dates set forth below, with respect to each count, in the District of New Hampshire, and elsewhere, the defendant,

**ERIK X. ALONSO,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, and aided and abetted others in executing, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), namely, NH Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money owned by, and under the custody and control of, NH Medicaid.

### Purpose of the Scheme

48.     It was the purpose of the scheme for **ALONSO** to unlawfully enrich himself by, among other things: (a) causing Clinic 1 to submit claims to NH Medicaid for reimbursement which were not reimbursable as a result of **ALONSO's** exclusion from Federal health care programs; (b) causing Clinic 1 to submit claims to NH Medicaid for reimbursement which were not reimbursable as **ALONSO** had not rendered psychotherapy services to J.C., as falsely represented in certain claims; (c) concealing the submission of false and fraudulent claims to NH Medicaid; and (d) transferring proceeds of the fraud for the personal benefit of **ALONSO**.

**Acts in Execution of the Scheme**

49. In order to execute and attempt to execute the scheme to defraud and to obtain money and property, and to accomplish the objects of the scheme, the defendant,

**ERIK X. ALONSO,**

submitted, caused others to submit, and aided and abetted others in submitting, the following false and fraudulent claims, seeking the identified dollar amounts, and representing that such benefits, items, and services were medically necessary and eligible for NH Medicaid reimbursement, with each execution set forth below forming a separate count:

| Count | Medicaid Recipient | Approx. Claim Date | Health Care Benefit Program | Description of Claim | Approx. Amount Billed |
|---|---|---|---|---|---|
| 1 | J.C. | 07/24/2023 | New Hampshire Medicaid | Psychotherapy, 1 Hour | $210 |
| 2 | J.C. | 08/04/2023 | New Hampshire Medicaid | Psychotherapy, 1 Hour | $210 |
| 3 | G.C. | 03/01/2024 | New Hampshire Medicaid | Psychotherapy, 1 Hour | $210 |
| 4 | T.C. | 03/08/2024 | New Hampshire Medicaid | Psychotherapy, 1 Hour | $210 |
| 5 | B.M. | 04/03/2024 | New Hampshire Medicaid | Psychotherapy, 1 Hour | $210 |
| 6 | B.M. | 04/10/2024 | New Hampshire Medicaid | Psychotherapy, 1 Hour | $210 |
| 7 | G.R. | 04/11/2024 | New Hampshire Medicaid | Psychotherapy, 1 Hour | $210 |

| Count | Medicaid Recipient | Approx. Claim Date | Health Care Benefit Program | Description of Claim | Approx. Amount Billed |
|---|---|---|---|---|---|
| 8 | G.R. | 04/18/2024 | New Hampshire Medicaid | Psychotherapy, 1 Hour | $210 |

Each of the above is a violation of Title 18, United States Code, Sections 1347 and 2.

## NOTICE OF FORFEITURE

50. Paragraphs 1 through 49 of this Indictment are incorporated herein by reference as factual allegations.

51. Upon conviction of the offenses alleged in Counts 1 through 8 of this Indictment, the defendant, **ERIK X. ALONSO**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of said offenses.

52. If any of the above-described property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States to seek a forfeiture money judgment and, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

                                                                                           **A TRUE BILL**

                                                                                      /s/ Foreperson_____

Dated: June 11, 2025                                                          Grand Jury Foreperson

JOHN J. MCCORMACK
Acting United States Attorney
District of New Hampshire

LORINDA LARYEA
Acting Chief
United States Department of Justice
Criminal Division, Fraud Section


By:   /s/ Danielle H. Sakowski
Danielle H. Sakowski
Thomas D. Campbell
John W. Howard
Trial Attorneys
Criminal Division, Fraud Section

   /s/ Matthew P. Vicinanzo
Matthew P. Vicinanzo
Assistant United States Attorney