FILED - USDC - NH
2025 AUG 29 PM 2:04

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 1:25-cr-00052-SE-AJ-01** |
| | ) | |
| **ERIK X. ALONSO** | ) | |

## PLEA AGREEMENT

Pursuant to Rules 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the

United States of America by its attorney, Erin Creegan, United States Attorney for the District of

New Hampshire, and the defendant, Erik X. Alonso, and the defendant's attorney, Jeff Levin,

Esquire, enter into the following Plea Agreement:

1. The Plea and the Offense.

The defendant agrees to plead guilty to Count 7 of the Indictment, which charges him

with Health Care Fraud, in violation of 18 U.S.C. § 1347.

In exchange for the defendant's guilty plea, the United States agrees to the sentencing

stipulations identified in Section 6 of this agreement.  The United States also agrees to move to

dismiss Counts 1–6 and 8 when the defendant is sentenced.

2. The Statute and Elements of the Offense.

Title 18, United States Code, Section 1347 provides, in pertinent part: "Whoever

knowingly and willfully executes, or attempts to execute, a scheme or artifice to defraud any

health care benefit program . . . in connection with the delivery of or payment of health care

benefits, items, or services, shall be fined under this title or imprisoned for not more than 10

years or both."

- 1 -

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, a scheme, substantially as charged in the Indictment, to defraud a health care benefit program, to wit, New Hampshire Medicaid, or to obtain by false or fraudulent pretenses, representations, or promises any money owned by or under the custody or control of such program;

Second, the defendant's knowing and willful participation in this scheme or artifice with the intent to defraud;

Third, that the scheme or artifice was in connection with the delivery of, or payment for, health care benefits, items, or services. *Pattern Criminal Jury Instructions for the District Courts of the First Circuit*, § 4.18.1347 (2015), available at

https://www.prd.uscourts.gov/sites/default/files/Pattern%20Jury%20Instructions%20Feb%20202 4_0.pdf

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offense beyond a reasonable doubt:

The Medicaid program ("Medicaid") was a federal- and state-funded health insurance program designed to provide medical assistance to persons whose income and resources were insufficient to meet the costs of necessary care and services. The Centers for Medicare and Medicaid Services was responsible for overseeing Medicaid in participating states, including New Hampshire. In New Hampshire, Medicaid was administered by the State of New Hampshire, through the New Hampshire Department of Health and Human Services ("DHHS").

- 2 -

Medicaid was a "health benefit program" as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f). As part of the federally approved state plan, DHHS contracted with Managed Care Organizations ("MCOs"), which were health insurance companies that provided coordinated health care to Medicaid beneficiaries. Health care professionals who contracted with MCOs to provide services to Medicaid beneficiaries were known as "providers."

Medicaid only paid for items and services that were reasonable and medically necessary and were provided by valid Medicaid providers. A valid Medicaid provider was a person or business who agreed to (1) provide the service, (2) submit the claim, and (3) accept as payment in full the amount paid by Medicaid. Additionally, a valid Medicaid provider was a person or business that was not on the United States Department of Health and Human Services, Office of the Inspector General's ("HHS-OIG") List of Excluded Individuals/Entities ("Exclusion List"). HHS-OIG maintained the Exclusion List that identified individuals and entities who could not receive payment from a Federal health care program, such as Medicaid, for any items or services they furnished, ordered, or prescribed.

The defendant, a psychotherapist, was aware that he was excluded from Federal health care programs as a result of a prior health-care-fraud conviction. On or about October 14, 2015, the defendant pleaded guilty in the United States District Court for the Southern District of Florida (Miami Division) to conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349, and conspiracy to make false statements relating to health care matters, in violation of Title 18, United States Code, Section 371. The defendant's signed plea agreement provided, "The defendant understands and acknowledges that as a result of this plea,

- 3 -

the defendant will be excluded from Medicare, Medicaid, and all Federal health care programs."
The exclusion was also discussed at the defendant's sentencing on these charges, on or about
December 17, 2015.

On or about March 4, 2022, the defendant executed a Contract Provider Work Agreement
with Clinic 1, a telehealth mental health provider with a principal place of business in Laconia,
New Hampshire. The Contract Provider Work Agreement read in part, "Contract Provider
agrees and understands that said compensation is based on reimbursement from insurance payers
per CPT codes." Beginning in or around March 2022, the defendant began working at Clinic 1
and began offering purported psychotherapy and other services to Medicaid beneficiaries. The
defendant subsequently caused Clinic 1 to bill Medicaid for counseling services the defendant
purportedly rendered to Medicaid beneficiaries, including for sessions conducted with a
Medicaid beneficiary in which the defendant requested the beneficiary's assistance in preparing
applications for licensure in other states and a presidential pardon.

On or about August 23, 2023, the defendant emailed with a representative of HHS-OIG
and was again told that he had been excluded from Federal health care programs for a minimum
of 42 years.

The defendant was additionally aware that Clinic 1 would bill Federal health care benefit
programs, including Medicaid, for his purported therapy sessions. Throughout the defendant's
employment with Clinic 1, Clinic 1's owner communicated with staff, including the defendant
about Medicaid-related audits and audit findings. On or about September 18, 2023, Clinic 1's
owner sent an email to staff at Clinic 1, including the defendant, advising staff of the results of a
recent audit. In the email, Clinic 1's owner wrote, in part, "Unfortunately, not meeting these

- 4 -

standards has resulted in an \$8,000 take back from Medicaid." On or about September 18, 2023, the defendant responded to the initial email, writing, "Received, noted."

On or about November 22, 2023, Clinic 1's owner sent an email to staff at Clinic 1, including the defendant, advising staff of the results of an audit for individual sessions billed in 2023 and the potential of a repayment of approximately \$30,000. In the email, Clinic 1's owner wrote, "Last year's Medicaid reimbursement was \$75 per session; with operational costs, what remains barely covers clinician salaries, taxes, and other necessities." On or about November 22, 2023, the defendant responded to this email.

The Defendant specifically knew that the individual client referenced in Count 7 of the Indictment was a Medicaid beneficiary. Beginning in and around January 2024, and continuing through in and around May 2024, the defendant began treating G.R., via telemedicine, for psychotherapy. The defendant was the only provider G.R. saw at Clinic 1.

On or about February 9, 2024, G.R.'s mother emailed the defendant regarding an insurance issue that had caused G.R. to cancel two prior appointments with the defendant. In the email, G.R.'s mother wrote, in part, "[G.R.] has Medicaid to pay for these appointments." On or about February 9, 2024, the defendant responded to G.R.'s mother, saying he would address the issue with a supervisor.

On or about February 12, 2024, the front desk manager at Clinic 1 emailed the defendant and Clinic 1's owner regarding G.R.'s insurance issue. In the email, the front desk manager wrote, in part, "The Mother changed insurance, provided Medicaid and NH Health Families." On or about February 12, 2024, the defendant responded, writing, in part, "Thank you [front desk manager] for all your help, this unfortunately happens a lot with Medicaid."

- 5 -

Beginning in and around March 2022, and continuing through in and around July 2024, claims were submitted to Medicaid by Clinic 1 for sessions conducted solely by the defendant for Medicaid beneficiaries. During this time period, Medicaid paid Clinic 1 approximately $173,998.83 for the purported treatment of the defendant's patients for psychotherapy and other mental health services purportedly provided by the defendant to Medicaid beneficiaries.

4. Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

A.    A maximum prison term of 10 years (18 U.S.C. § 1347)

B.    A maximum fine of $250,000 or twice the pecuniary gain (18 U.S.C. § 3571)

C.    A term of supervised release of at least 3 years (18 U.S.C. § 3583(b)(2)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release;

D.    A mandatory special assessment of $100 for each count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)); and

E.    In addition to the other penalties provided by law, the Court may order the defendant to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

To facilitate the payment and collection of any restitution that may be ordered, the defendant agrees that, upon request, he will provide the United States with a financial disclosure statement and supporting financial documentation.

The defendant further agrees that, if restitution is ordered, it shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full, including, but not limited to, the Treasury Offset Program.

5. Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case

and that the Court is required to consider the United States Sentencing Guidelines as advisory

guidelines.  The defendant further understands that he has no right to withdraw from this Plea

Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation

Office shall:

A.    Advise the Court of any additional, relevant facts that are presently known
      or may subsequently come to their attention;

B.    Respond to questions from the Court;

C.    Correct any inaccuracies in the pre-sentence report;

D.    Respond to any statements made by him or his counsel to a probation
      officer or to the Court.

The defendant understands that the United States and the Probation Office may address

the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable

sentencing range under the advisory Sentencing Guidelines that he may have received from any

source is only a prediction and not a promise as to the actual sentencing range under the advisory

Sentencing Guidelines that the Court will adopt.

6. Sentencing Stipulations and Agreements.

Pursuant to Fed. R. Crim. 11(c)(1)(B), the United States and the defendant stipulate and

agree to the following:

(a)    The United States will recommend that the defendant be sentenced within

- 7 -

the guidelines sentencing range as determined by the Court;

(b)     The parties agree that the loss amount under U.S.S.G. § 2B1.1 is
$173,998.83;

(c)     The parties have agreed that the defendant shall pay restitution in the
amount of $173,998.83, payable to the United States Department of
Health and Human Services.

The defendant understands that the Court is not bound by the foregoing agreements and,
with the aid of a pre-sentence report, the Court will determine the facts relevant to sentencing.
The defendant also understands that if the Court does not accept any or all of those agreements,
such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other
sentencing enhancements should be applied in determining the advisory guideline range in this
case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to
the terms of imprisonment, fines, conditions of probation or supervised release, and any other
penalties, requirements, and conditions of sentencing as each party may deem lawful and
appropriate, unless such recommendations are inconsistent with the terms of this Plea
Agreement.

7. Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the
defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the
defendant's apparent prompt recognition and affirmative acceptance of personal responsibility

for the offense. The United States, however, may oppose any adjustment for acceptance of

responsibility if the defendant:

A.  Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.  Challenges the United States' offer of proof at any time after the plea is entered;

C.  Denies involvement in the offense;

D.  Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.  Fails to give complete and accurate information about his financial status to the Probation Office;

F.  Obstructs or attempts to obstruct justice, prior to sentencing;

G.  Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.  Fails to appear in court as required;

I.  After signing this Plea Agreement, engages in additional criminal conduct; or

J.  Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any

of the reasons listed above, the United States does not recommend that he receive a reduction in

his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the

offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States

- 9 -

in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8. Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant also understands that he has the right:

A. To plead not guilty or to maintain that plea if it has already been made;

B. To be tried by a jury and, at that trial, to the assistance of counsel;

C. To confront and cross-examine witnesses;

D. Not to be compelled to provide testimony that may incriminate him; and

E. To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9. Acknowledgment of Guilt; Voluntariness of Plea.

- 10 -

The defendant understands and acknowledges that he:

A.    Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.    Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.    Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.    Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.    Is completely satisfied with the representation and advice received from his undersigned attorney.

10. Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The

- 11 -

defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

The defendant understands and acknowledges that as a result of this plea, the defendant will be further excluded from Medicare, Medicaid, and all Federal health care programs. The defendant agrees to complete and execute all necessary documents provided by any department or agency of the federal government, including but not limited to the United States Department of Health and Human Services, to effectuate this exclusion within 60 days of receiving the documents. This exclusion will not affect the defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid.

12. Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the Indictment in this case.

- 12 -

The defendant understands and agrees that, if after entering this Agreement, he fails

specifically to perform or fulfill completely each one of his obligations under this Agreement,

fails to appear for sentencing, or engages in any criminal activity prior to sentencing, he will

have breached this Agreement.

If the United States, in its sole discretion, and acting in good faith, determines that the

defendant committed or attempted to commit any further crimes, failed to appear for sentencing,

or has otherwise violated any provision of this Agreement, the United States will be released

from its obligations under this Agreement, including, but not limited to, any agreement it made

to dismiss charges, forbear prosecution of other crimes, or recommend a specific sentence or a

sentence within a specified range. The defendant also understands that he may not use his

breach of this Agreement as a reason to withdraw his guilty plea or as a basis to be released from

his guilty plea.

13. Waivers.

A. Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or

sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and

voluntarily waives his right to challenge on direct appeal:

1.    His guilty plea and any other aspect of his conviction, including, but not
      limited to, adverse rulings on pretrial suppression motion(s) or any other
      adverse disposition of pretrial motions or issues, or claims challenging the
      constitutionality of the statute of conviction; and

2.    The sentence imposed by the Court if it is within, or lower than, the
      guideline range determined by the Court, or if it is imposed pursuant to a
      minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new

- 13 -

legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea

Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B. Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or

sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering

into this Plea Agreement, the defendant knowingly and voluntarily waives his right to

collaterally challenge:

1.  His guilty plea, except as provided below, and any other aspect of his
    conviction, including, but not limited to, adverse rulings on pretrial
    suppression motion(s) or any other adverse disposition of pretrial motions
    or issues, or claims challenging the constitutionality of the statute of
    conviction; and

2.  The sentence imposed by the Court if it is within, or lower than, the
    guideline range determined by the Court, or if it is imposed pursuant to a
    minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a

collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on

the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral

review also does not operate to waive a collateral challenge based on new legal principles

enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea

Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a

representative, to request or receive from any department or agency of the United States any

records pertaining to the investigation or prosecution of the case(s) underlying this Plea

- 14 -

Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

14. No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15. Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the Acting United States Attorney for the District of New Hampshire, or a Trial Attorney from the Criminal Division.

16. Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

ERIN CREEGAN
United States Attorney

LORINDA LARYEA
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

- 15 -

Date: 8/29/25                          By: _____
                                           Danielle H. Sakowski
                                           Thomas D. Campbell
                                           John W. Howard
                                           Matthew Vicinanzo
                                           Trial Attorneys
                                           MA Bar #684865
                                           U.S. Department of Justice
                                           Criminal Division, Fraud Section
                                           1400 New York Avenue, N.W.
                                           Washington, D.C. 20005
                                           Danielle.sakowski@usdoj.gov

The defendant, Erik X. Alonso, certifies that he has read this 16-page Plea Agreement and that he fully understands and accepts its terms.

Date: 08/22/25                         _____
                                       Erik X. Alonso, Defendant

I have read and explained this 16-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 8/29/25                          _____
                                       Jeff Levin, Esquire
                                       Attorney for Erik X. Alonso

- 16 -